UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 OCT 31  P 2: 36

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| SUSAN DEMARTINIS, Individually,<br>as surviving spouse and as<br>ADMINISTRATRIX OF THE ESTATE<br>OF MARC PETER DEMARTINIS,<br>DECEASED,<br><br>   Plaintiffs,<br>  v.<br><br>ALITALIA LINEE-AEREE<br>ITALIANE,  S.p.A.,<br><br>   Defendant. | 302  Civ. 1757 (AVC)<br><br>October 28, 2003 |

**DEFENDANT ALITALIA'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR THE ISSUANCE OF A LETTER OF REQUEST
FOR THE EXAMINATION OF WITNESSES IN ITALY PURSUANT TO
THE HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD**

STANGER & ARNOLD, LLP
29 South Main Street, Suite 325N
West Hartford, CT 06107
(860) 561-0650

  -and-

BIEDERMANN, HOENIG, MASSAMILLO
 & RUFF, P.C.
90 Park Avenue
New York, New York 10016
(212)  697-6555

Attorneys for Defendant
ALITALIA LINEE-AEREE ITALIANE S.p.A.

## INTRODUCTION AND REQUEST FOR RELIEF

Defendant ALITALIA LINEE-AEREE ITALIANE, S.p.A. ( "ALITALIA"), submits this Memorandum of Law in support of its Motion, pursuant to Local Rule 7 and Rules 28, 30 and 32 of the Federal Rules of Civil Procedure, for the issuance by the Court of a "Letter of Request," addressed to the Central Authority in Italy, for the purpose of taking critical evidence abroad.

This Application is made pursuant to, and in conformity with, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, T.I.A.S. 7444, 23 U.S.T. 2555, 847 UNTS 231, reprinted in 28 U.S.C.A. § 1781 ("Hague Evidence Convention"), which is in force between the United States and Italy.[1]

This evidence will be in the form of the oral examination of (1) Dr. Robert Caterini, Physician on Duty, Malpensa International Airport an employee of Societa Esercizi Aeroportuali S.p.A. ("SEA"); (2) D. Giatti, Nurse, Emergency Room, Malpensa International Airport, also an employee of SEA; (3) Dr. Cristiana Roveda, Acting Public Prosecutor, Office of the Public Prosecutor, Busto Arsizio; and (4) Mirko Sbordoni, Assistant Commander, National Police, Border Police Bureau, Malpensa International Airport Criminal Investigation Unit, all of whom are resident in Italy. In order to expedite the taking of the above depositions, a Court Order must be obtained from this Court. Defendant ALITALIA also respectfully requests an appointment by this Court of Eugene Massamillo, Esq. as a commissioner before whom the testimony of the above named individuals may be taken.

---

[1] Accompanying this Motion is the "Request for International Judicial Assistance for the Examination of Witnesses in Italy Pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters" which includes proposed questions. In accordance with the provision of the Hague Convention, the "Letter of Request" has also been translated into Italian

## STATEMENT OF FACTS

This action arises from an incident which occurred on March 3, 2001, while the decedent, Marc Peter DeMartinis, and his mother, Natalie Rose DeMartinis, were ALITALIA passengers on board ALITALIA flight 619, traveling from Boston's Logan International Airport to Malpensa International Airport, Milan and connecting to Rome, Italy. The decedent allegedly suffered a heart attack while on board the aircraft and died shortly thereafter at a local hospital.

Based upon the allegations in the Complaint, plaintiff claims that ALITALIA negligently responded to plaintiff's decedent and failed to provide medical assistance See Complaint, ¶¶ 13, 14, 18. Plaintiff Susan DeMartinis, the decedent's wife, has brought suit on her own behalf, the estate and the decedent's two children. Plaintiff seeks $10,000,000 in damages.

## A. Testimony of Dr. Roberto Caterini and Nurse D. Giatti

Societa Esercizi Aeroportuali S.p.A. ("SEA") is the airport manager for Milan's Malpensa International Airport (owned by the City of Milan). SEA provides, among other things, medical services at the Milan airport.

Prior to the decedent's death and while he was still on the aircraft, he was treated by Dr. Robert Caterini, an employee of SEA, and Nurse D. Giatti, also an employee of SEA. Both of these witnesses reside in Italy. Dr. Caterini and Nurse Giatti were eyewitnesses directly involved in providing the decedent, Marc DeMartinis, emergency medical treatment while he was on the aircraft. It is expected that they will offer competent testimony regarding the decedent's condition prior to death. While providing emergency medical treatment to the decedent, Dr. Caterini and Nurse Giatti spoke to the ALITALIA crew members who were present on the aircraft, as well as the decedent's

mother, Mrs. Natalie DeMartinis, who was present during the entire incident. Dr. Caterini and Nurse

Giatti accompanied the decedent to the hospital in Gallarte where he died.  Dr. Caterini thereafter

prepared a  report for Public Prosecutor Cristiana Roveda which she included as part of her

investigation of the incident.

The testimony of Dr. Caterini and Nurse Giatti is critical to ALITALIA's defense in that they

are medical personnel who rendered emergency treatment to the decedent immediately prior to his

death and, therefore, defendant ALITALIA expects that they will testify regarding the circumstances

surrounding the decedent's death and conversations that they had with the ALITALIA crew.

Because plaintiff's central claim is that ALITALIA negligently responded to the decedent and

contributed to his death, the testimony of these witnesses is critical to the determination of liability

issues in this case.

**B.  Dr. Cristiana Roveda, Public Prosecutor and
     Mirko Sbordoni, Assistant Commander, National Police**

After the decedent's death, an investigation of the incident ensued.  The investigation was

conducted by the Public Prosecutor's Office, as  is standard procedure.   Dr. Cristiana Roveda, the

Acting Public Prosecutor in the Office of the Public Prosecutor, supervised the investigation. Officer

Mirko Sbordoni of the Border Police Bureau in the Malpensa International Airport Criminal

Investigation Unit participated in the investigation and interviewed the decedent's mother

immediately after the incident.

The investigation conducted by Dr. Roveda consisted of (1) an interview of the decedent's

mother; (2) an autopsy of the decedent; (3) a review of the autopsy report; (4) organizing a police

investigation; (5) preparation of a written report by Dr. Roberto Caterini; and (6) review of the report

of the incident contained in the flight log prepared by Captain Nunzio Castelli, the pilot in command

of ALITALIA flight 619, who responded to the incident on the aircraft.

Officer Mirko Sbordoni interviewed the decedent's mother, Mrs. Natalie DeMartinis, several

hours after the incident. Portions of that interview contradict the deposition testimony of Mrs.

DeMartinis taken during discovery. For example, central to plaintiff's claims against ALITALIA

is her allegation that ALITALIA did not respond to Natalie DeMartinis' request for assistance when

she could not wake her son to disembark. This allegation is in conflict with the transcript of the

interview conducted by Officer Sbordoni. Thus, it is critical that ALITALIA depose Officer

Sbordoni about the contents of his interview with Mrs. DeMartinis and any other conversations he

may have had with her or the ALITALIA flight crew.

Factual discovery in this case has proceeded and the parties have exchanged interrogatories

and document demands. The depositions of plaintiff, Susan DeMartinis, and Natalie DeMartinis

have been taken. The depositions of the ALITALIA cabin and flight crew are scheduled to be held

on October 22 , 2003. Expert discovery is scheduled to conclude on November 15, 2003.

ALITALIA has been advised that in order to expedite the taking of the depositions of (1)

Dr. Robert Caterini; (2) Nurse D. Giatti; (3) Dr. Cristian Roveda; and (4) Officer Mirko Sbordoni,

a Court Order must be obtained from this Court. As it has done in other cases involving ALITALIA

and litigation pending in the United States, SEA has advised that it will, comply with an appropriate

court order and produce its employees Dr. Caterini and Nurse Giatti for depositions.

The specified witnesses are not parties to the action and are not within ALITALIA's control

because they are outside the subpoena power of this Court. These witnesses, however, will be

crucial in providing unbiased testimony as to their observations of the incident and the investigation that ensued.

For the foregoing reasons, we respectfully request that the Court issue an Order permitting ALITALIA to take the critical evidence via deposition abroad of non-party witnesses (1) Dr. Robert Caterini; (2) Nurse D. Giatti; (3) Dr. Cristiana Roveda; and (4) Officer Mirko Sbordoni, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

## ARGUMENT

### IT IS COMPLETELY PROPER AND WITHIN THIS COURT'S JURISDICTION TO ISSUE A "LETTER OF REQUEST" FOR THE TAKING OF DEPOSITIONS ABROAD

It is now a well settled practice and procedure of private international law that the issuance of a Letter of Request under the Hague Evidence Convention is a proper method for the taking of testimony of persons residing abroad. Fed. R. Civ. P. 28(b);    *Pain v. United Technologies Corporation*, 637 F.2d 775, 788-90 (D.C. Cir. 1980).

Italy, which ratified the Hague Evidence Convention in 1982, and the United States, which was one of the first to ratify in 1972, are both parties to and bound by the Convention's terms. *See* T.I.A.S. 7444, 23 U.S.T. 2555, reprinted in 28 U.S.C.A. § 1781.

In respect of an application for a Letter of Request, Article 1 of the Convention sets forth as follows:

> In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act.

> A Letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated.
>
> The expression "other judicial act" does not cover the service of judicial documents or the issuance of any process by which judgments or orders are executed or enforced, o orders for provisional or protective measures.

Article 2 states:

> A Contracting State shall designate a Central Authority which will undertake to receive Letters of Request coming from a judicial authority of another Contracting State and to transmit them to the authority competent to execute them. Each State shall organize the Central Authority in accordance with its own law.
>
> Letters shall be sent to the Central Authority of the State of Execution without being transmitted through any other authority of that state.

Pursuant to the forgoing mandates, Article 18 of the Convention provides the specific dispensation for applying to the "competent authority" of the foreign state (here, Italy) for "appropriate assistance" to obtain evidence by compulsion. That Article sets forth in full as follows:

> A Contracting State may declare that a diplomatic officer, consular agent or commissioner authorized to take evidence under Articles 15, 16, or 17, may apply to the competent authority designated by the declaring State for appropriate assistance to obtain the evidence by compulsion. The declaration may contain such conditions as the declaring State may see fit to impose.
>
> If the authority grants the application it shall apply any measures of compulsion which are appropriate and are prescribed by its law for use in internal proceedings.

In the ratifying notes deposited by the Italian government upon signature and ratification, Italy has designated the "Court of Appeal within whose jurisdiction proceedings are to take place as the authority competent to: ... grant the judicial assistance provided for in Article 18." *See* T.I.A.S. 7444, 23 U.S.T. 2555, reprinted in 28 U.S.C.A. § 1781. Because the witnesses are residents of Italy,

7

the Italian Court of Appeal, located in Milan where the testimony is to be taken, would receive and

act upon this Court's Letter of Request after it is submitted by ALITALIA.

In accordance with the foregoing, defendant ALITALIA respectfully requests:

(1) the Court approve and sign the attached Letter of Request, which is in compliance with and contains all the information required by Article 3 of the Hague Evidence Convention.

(2) ALITALIA further requests that, after the Court has signed the Letter of Request, the Clerk of this Court authenticate the Court's signature under the seal of this Court, and that the Letter of Request be thereafter transmitted to the Clerk of the Court of Appeal of Milan[2] in conformity with Article 2 of the Convention so that the critical depositions of non-party witnesses (1) Dr. Robert Caterini; (2) Nurse D. Giatti; (3) Dr. Cristiana Roveda; and (4) Officer Mirko Sbordoni may be compelled.

ALITALIA also respectfully requests that this Court appoint Eugene Massamillo as a

"commissioner," as set forth in Article 18 of the Convention, before whom the testimony of the

above named individuals may be taken.

---

[2]As is more fully set forth in the accompanying Letter of Request, the address of the Court of Appeal of Milan is as follows:

> Corte d'Appello di Milano
> Tribunale Civile di Milano
> Corso di Porta Vittoria
> Milano (20122) ITALY.

## CONCLUSION

For the reasons set forth above, Defendant ALITALIA LINEE-AEREE ITALIANE, S.p.A.

respectfully requests that this Court issue a Letter of Request to the Court of Appeal of Milan for

the compulsion of the non-party witnesses deposition testimony.

Dated: New York, New York
      October 28, 2003

                            Respectfully submitted,

By: _Jeanine Driscoll_

      Eugene Massamillo (ct 16211)
      Jeanine C. Driscoll (ct 24341)
      BIEDERMANN, HOENIG, MASSAMILLO
        & RUFF, P.C.
      90 Park Avenue
      New York, New York 10016
      (212) 697-6555

                 and

      STANGER & ARNOLD, LLP
      Steven E. Arnold (ct 07966)
      29 South Main Street, Suite 325N
      West Hartford, CT 06107
      (860) 561-0650

      Attorneys for Defendant
      **ALITALIA LINEE-AEREE ITALIANE S.p.A.**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN DEMARTINIS, Individually, | ) | |
| as surviving spouse and as | ) | |
| ADMINISTRATRIX OF THE ESTATE | ) | |
| OF MARC PETER DEMARTINIS, | ) | |
| DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | **302  Civ. 1757 (AVC)** |
| v. | ) | |
| | ) | October 28, 2003 |
| ALITALIA-LINEE AEREE | ) | |
| ITALIANE, S.p.A. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR ISSUANCE OF LETTER OF
REQUEST PURSUANT TO HAGUE CONVENTION AND APPROVING THE
APPOINTMENT OF EUGENE F. MASSAMILLO, ESQ. AS COMMISSIONER FOR
THE PURPOSE OF TAKING EVIDENCE THROUGH THE TESTIMONY OF
WITNESSES IN THE REPUBLIC OF ITALY**

   **THIS CAUSE**, having come before this Court on Defendant's Motion for issuance by the

Court of a Letter of Request, it is

   **ORDERED AND ADJUDGED:**

   1.    The Court will issue a Letter of Request in the form submitted by Defendant

ALITALIA, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or

Commercial Matters, for the purpose of taking the depositions by sworn oral testimony of (1) Dr.

Robert Caterini, Physician on Duty, Malpensa Airport an employee of Societa Esercizi Aeroportuali

S.p.A. ("SEA"); (2) D. Giatti,  Nurse, Emergency Room, Malpensa Airport, also an employee of

SEA; (3) Dr. Cristiana Roveda, Acting Public Prosecutor Office of the Public Prosecutor Busto

Arsizio; and (4) Mirko Sbordoni, Ass't Commander, National Police, Border Police Bureau,

Malpensa Airport Criminal Investigation Unit.

2.      The Court hereby appoints Eugene Massamillo, Esq. as commissioner for the purpose of

taking evidence under Articles 17 and 18 of the Hague Convention through the testimony of (1) Dr.

Robert Caterini,; (2) Nurse D. Giatti; (3) Dr. Cristiana Roveda; and (4) Mirko Sbordoni, in the

Republic of Italy.

        **DONE AND ORDERED** in Hartford, Connecticut on this ____ day of November, 2003.


                                        _____
                                        HON. ALFRED V. COVELLO
                                        UNITED STATES DISTRICT JUDGE

Conformed Copies to:

Eugene Massamillo, Esq.
Vincent Sabatini, Esq.
Steven Arnold, Esq.

Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


SUSAN DEMARTINIS, Individually,     )
as surviving spouse and as          )
ADMINISTRATRIX OF THE ESTATE        )
OF MARC PETER DEMARTINIS,           )
DECEASED,                           )
                                    )
            Plaintiffs,             )     **302 Civ. 1757 (AVC)**
      v.                            )     October 28, 2003
                                    )
ALITALIA-LINEE AEREE                )
ITALIANE, S.p.A.                    )
                                    )
            Defendants.             )
_____)


**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE FOR THE EXAMINATION
OF WITNESSES IN ITALY PURSUANT TO THE HAGUE CONVENTION ON
THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

1.    Sender:                    Office of the Clerk
                                 United States District Court
                                 District of Connecticut - Hartford
                                 Abraham Ribicoff Federal Building
                                 450 Main Street
                                 Hartford, CT 06103
                                 Tel. (860)240-3200

2.    Central Authority of       Court of Appeal of Milan
      the Requested State:       Corte d'Appello di Milano
                                 Tribunale Civile di Milano
                                 Corso di Porta Vittoria
                                 Milano (20122) ITALY

3.    Person to whom the         Hon. Alfred V. Covello
      executed Request is to     United States District Judge
      be returned:               United States District Court
                                 District of Connecticut - Hartford
                                 Abraham Ribicoff Federal Building
                                 450 Main Street
                                 Hartford, CT 06103   U.S.A.

4.    In conformity with Article 3 of the Hague Convention, the
undersigned applicant has the honor to submit the following

request:

5. Requesting Judicial
   Authority:

                                   Office of the Clerk
United States District Court
District of Connecticut - Hartford
Abraham Ribicoff Federal Building
450 Main Street
Hartford, CT 06103
Tel. (860)240-3200

    To the competent
authority of:            The Republic of Italy

6. Names and addresses of
   the parties and their
   representatives:

    a. Plaintiff:         SUSAN DEMARTINIS
c/o Vincent Sabatini, Esq.
Sabatini & Associates, LLC
One Market Square
Newington, Connecticut  06111-2992
(860)667-0839

    b. Defendant:        ALITALIA LINEE-AEREE ITALIA, S.p.A.
c/o Eugene Massamillo, Esq.
BIEDERMANN, HOENIG, MASSAMILLO
& RUFF, P.C.
90 Park Avenue - 36th Floor
New York, New York 10016
U.S.A.
(212) 697-6555

7. Nature and purpose of the
   proceedings and summary
   of the facts:        This is a civil suit involving a
wrongful death claim alleged by
plaintiff, Susan DeMartinis, arising
from the death of her husband, the
decedent, Marc DeMartinis, on board
Alitalia flight 619 on March 3,
2001, between Boston's Logan
International Airport and Malpensa
International Airport in Milan,
Italy. Plaintiff claims that

Alitalia did not render emergency medical treatment to the decedent. Plaintiff alleges that Alitalia was negligent in responding to the medical emergency and caused decedent's death. Alitalia denies the allegations. Rather, Alitalia alleges that the decedent's mother did not request assistance until the flight was about to arrive at the airport in Milan after she discovered that she could not wake the decedent.

8. Evidence to be obtained or other judicial act to be performed:

It is requested that the Italian Judicial Authority issue an appropriate Order to enable Alitalia Airlines to obtain critical oral testimony and evidence in its defense, by compulsion pursuant to Article 18 of the Convention, from the following witnesses (1) Dr. Roberto Caterini, Physician on Duty, Malpensa International Airport an employee of SEA; (2) D. Giatti, Nurse, Emergency Room, Malpensa International Airport, also an employee of SEA; (3) Dr. Cristiana Roveda, Acting Public Prosecutor, Office of the Public Prosecutor Busto Arsizio; and (4) Mirko Sbordoni, Ass't Commander, National Police, Border Police Bureau, Malpensa International Airport. All of these witnesses reside in Italy.

9. Identity and address of person to be examined:

Dr. Roberto Caterini
Societa Esercizi Aeroportuali
   S.p.A. ("SEA")
Malpensa International Airport
Terminal Two
Milano, ITALY
Tel. ++39-02-7485-4445

Nurse D. Giatti
Societa Esercizi Aeroportuali

3

S.p.A. ("SEA")
Malpensa International Airport
Terminal Two
Milano, ITALY
Tel. ++39-02-7485-4445

Dr. Cristiana Roveda
Public Prosecutor
Office of the Public Prosecutor
Largo Giardino 43
21052 Busto Arsizio
Varese, Italy
Tel. ++39-02-2903-5264

Assistant Commander Mirko Sbordoni
National Police
Border Police Bureau
Malpensa International Airport
Criminal Investigation Unit
Milano, Italy
Tel. 39-02-5858-4721

10. Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined:

Dr. Roberto Caterini and Nurse Giatti provided emergency medical treatment to the decedent and, while doing so, spoke to the ALITALIA crew members who were present on the aircraft and possibly to the decedent's mother, Mrs. Natalie DeMartinis. Dr. Caterini and Nurse Giatti accompanied the decedent to the hospital in Gallarte, where he died. Dr. Caterini thereafter prepared a report for Public Prosecutor, Cristiana Roveda, in furtherance of her investigation. The testimony of Dr. Caterini and Nurse Giatti is critical to ALITALIA's defense in that these individuals treated the decedent immediately prior to his death and will be able to testify regarding

4

the cause of the decedent's death, as well as conversations they had with the ALITALIA crew. **It is respectfully requested that Dr. Caterini and Nurse Giatti be asked the questions set forth in Attachment A, annexed hereto, and to which we respectfully refer the Court.**

After the decedent's death, an investigation of the incident was conducted by the Public Prosecutor's Office, as is standard procedure. Dr. Cristiana Roveda, the Acting Public Prosecutor in the Office of the Public Prosecutor supervised the investigation. Officer Mirko Sbordoni of the Border Police Bureau in the Malpensa International Airport Criminal Investigation Unit participated in the investigation and interviewed the decedent's mother immediately after the incident. The investigation conducted by Dr. Cristiana Roveda consisted of interviews of the decedent's mother, an order for an autopsy of the decedent and the autopsy report, police investigation, and a compilation of written statements from Dr. Roberto Caterini and the report of the incident in the flight log prepared by Captain Nunzio Castelli, the pilot in command of ALITALIA flight 619 who responded to the incident. Officer Mirko Sbordoni interviewed the decedent's mother, Natalie DeMartinis, several hours after the incident. Central to plaintiff's claims against ALITALIA is her allegation that ALITALIA did not respond to Natalie DeMartinis' request for assistance upon discovering that she could not wake her son to depart from the aircraft. **It is respectfully requested that Dr.**

Cristiana Roveda and Assistant Commander Mirko Sbordoni be asked the questions set forth in Attachments "B" and "C" annexed hereto, and to which we respectfully refer the Court.

11. Documents or other property to be inspected:

Any medical reports, writings, correspondence or other documents pertaining to plaintiff's decedent Marc DeMartinis.

12. Any requirement that the evidence be given on oath or affirmation and any specific form to be used:

Each of the witnesses should be examined under oath or affirmation before a competent authority authorized to administer oaths or affirmations, and/or the commissioner appointed by the United States District Court for the District of Connecticut.

13. Special methods or procedure to be followed:

It is requested that: (1) the parties' representatives or their designees, interpreters, a videographer and a stenographer be permitted to be present during the examination; (2) there be excluded from the examination, if permitted under Italian law, all persons other than the judicial officer or duly appointed commissioner conducting the examination of the witness or witnesses, the attorneys for the parties, the attorneys for the witnesses, if any, the stenographer, interpreters, videographer and other officials of the Italian court normally present during such proceedings; (3) the representatives or their designees be permitted to submit additional questions for presentment to each witness following his/her answering of the questions set forth in Section 10 above; and (4) a stenographer and

6

videographer be permitted to record
verbatim the examination of each
witness.

14.  Request for notification of
the time and place for the
execution of the Request
and identity and address
of any person to be notified:

**Please notify the following persons when and where the examination is to be conducted:**

Eugene F. Massamillo, Esq.
BIEDERMANN, HOENIG, MASSAMILLO
  & RUFF, P.C.
Attorneys for Defendant ALITALIA
LINEE-AEREE ITALIANE, S.p.A.
90 Park Avenue - 36th Floor
New York, New York 10016
U.S.A.
(212) 697-6555


James V. Sabatini, Esq.
Attorney for Plaintiff
Sabatini & Associates, LLC
One Market Square
Newington, Connecticut    06111-2992
(860)

15.  Request for attendance or participation
of judicial personnel of the requesting
authority at the execution of the Letter
of Request:

No request is made in this regard.


16.  Specification of privilege or duty to
refuse to give evidence under the law
of the State of origin:

Each witness may refuse to answer any question propounded
pursuant to Section 13(3) above if such answer would subject
him/her to a real and appreciable danger of criminal liability in
the United States, or would disclose a confidential communication
between him and his attorney.

7

17. The fees and costs incurred which
    are reimbursable under the second
    paragraph of Article 14 or under
    Article 26 of the Convention will
    be borne by:

                              Defendant    ALITALIA    LINEE-AEREE
                              ITALIA, S.p.A.
                              c/o BIEDERMANN, HOENIG, MASSAMILLO&
                              RUFF, P.C.
                              90 Park Avenue - 36th Floor
                              New York, New York 10016
                              U.S.A.

18. Date of Request:          November ___, 2003


19. Signature and Seal of
    the requesting authority:    _____


                              HON. ALFRED V. COVELLO
                              UNITED STATES DISTRICT JUDGE


8

Attachments: A, B and C

ATTACHMENT "A" TO REQUEST FOR INTERNATIONAL
JUDICIAL ASSISTANCE QUESTIONS TO
(1) DR. ROBERTO CATERINI and (2) NURSE D. GIATTI:

1.    What is your occupation?

2.    Are you licensed to practice your profession and, if so, when were you so licensed?

3.    By whom are you licensed and where does the license entitle you to practice your profession?

4.    Since the time you were licensed, have you been practicing your profession on a full time basis?

5.    Please describe your educational background with schools attended, dates of graduation and degrees conferred.

6.    Have you written and/or published any articles, pamphlets, books or other literature in the field of your profession and, if so, describe briefly?

7.    Are you a member of any professional, trade or business associations?

8.    Have you been bestowed with any professional honors and, if so, which ones?

9.    During the course of working as a professional in your industry, what positions of responsibility have you held?

10.   By whom were you employed on or about March 3, 2001?

11.   How long had you been employed by Societa Esercizi Aeroportuali S.p.A. ("SEA")?

12.   What were your duties as an employee of SEA on or about March 3, 2001?

13.   What is the business address of SEA in which you worked on or about March 3, 2001?

14.   What is the business of SEA?

15.   Prior to working with SEA, where were you employed, in which position and what were your duties there?

16.   Did there come a time on March 3, 2001 when you were called

**ATTACHMENT A - Page 1**

upon to render assistance to an airline passenger named Marc DeMartinis at Malpensa Airport?

17.  What was the location of Mr. DeMartinis on March 3, 2001 when you were called upon to render assistance to him at Malpensa Airport?

18.  What was the approximate time of day on March 3, 2001 that you were called upon to render assistance to Mr. DeMartinis at Malpensa Airport?

19.  How did it come to your attention that Mr. DeMartinis needed your assistance?

20.  Where were you when you received the order to render assistance to Mr. DeMartinis? Where were you directed to go?

21.  When you first came upon Mr. DeMartinis were any ALITALIA employees present?  Did you say anything to them?  Did they say anything to you?  If so, what?

22.  Was anyone else present? Who? Did you speak to that person(s)? What did that person(s) say to you?

23.  When you first came upon Mr. DeMartinis, was he lying on the floor, sitting, standing or in some other position? Please describe your observations in this regard.

24.  When you first came upon Mr. DeMartinis, was he conscious?

25.  If Mr. DeMartinis was unconscious, did you check his vital signs?  Was he breathing?  Did you check his blood pressure? Do you recall what it was?

26.  At this point, did anyone present indicate to you what had happened?  If so, what did that person(s) say to you?

27.  After observing Mr. DeMartinis, did you form your own opinion as to what had happened to him and, if so, what was it?  On what specific observations did you base your opinion?

28.  Did you have any conversation with Natalie DeMartinis, Mr. DeMartinis' mother?  If so, what was the substance of that conversation.

29.  How long did you remain on the aircraft with Mr. DeMartinis?

30.  Did you render emergency assistance to Mr. DeMartinis?

**ATTACHMENT A - Page 2**

31.  What assistance did you provide to Mr. DeMartinis?

32.  Was he removed from the aircraft?  If so, by whom?

33.  Was Mr. DeMartinis taken to the hospital? If so, (a) what
     hospital did you take him to?  (b) how did he travel there and
     (c) did you accompany him to the hospital?

34.  Was Mr. DeMartinis conscious during the trip to the hospital?
     What was his condition during the trip to the hospital? Did it
     change after he was removed from the aircraft?

35.  Did you have any conversations with anyone during the trip to
     the hospital and, if so, what was the substance of that
     conversation?

36.  Did you render any medical treatment or assistance to Mr.
     DeMartinis while at the hospital?  If so, what specific
     medical treatment or assistance did you provide to Mr.
     DeMartinis?

37.  If you did not render any medical treatment or assistance to
     Mr.  DeMartinis while at the hospital, did you observe or
     otherwise know whether anyone else rendered him such treatment
     or assistance? If so, who and what treatment or assistance was
     rendered?

38.  Did you speak to the physician who treated Mr. De Martinis at
     the hospital?  Please describe the substance of that
     conversation.

39.  Did anyone who was present on the aircraft also accompany Mr.
     DeMartinis to the hospital? Who?

40.  Did you ask anyone on the aircraft or at the hospital whether
     Mr. DeMartinis had taken any drugs or medication prior to the
     incident?  If so, who and what did they say?

41.  Have you had occasion to observe other individuals who have
     had a heart attack? If so, what symptoms, did those
     individuals exhibit? What similar symptoms did Mr. DeMartinis
     exhibit?

42.  How long approximately after Mr. DeMartinis arrived at the
     hospital was it announced that he died?  Were you present?  If
     not, how did you obtain this information? Did you tell anyone?

**ATTACHMENT A - Page 3**

43.  Did you accompany anyone out of the hospital and, if so, who?

44.  After you left the hospital, did there come a time when you had a conversation with anyone concerning this incident? Who? What was the substance of that conversation?

45.  Did you prepare a written report of the incident involving Mr. DeMartinis? If so, for what purpose did you prepare the report, what was the substance of the report and in whose custody is the report today?

46.  Did you come to any conclusions in the report concerning this incident? Please describe these conclusions.

**ATTACHMENT A - Page 4**

ATTACHMENT "B" TO REQUEST FOR INTERNATIONAL
JUDICIAL ASSISTANCE QUESTIONS TO
DR. CRISTIANA ROVEDA, ACTING PUBLIC PROSECUTOR:

1.    What is your occupation?

2.    Are you licensed to practice your profession and, if so, when
      were you so licensed?

3.    By whom are you licensed and where does the license entitle
      you to practice your profession?

4.    Since the time you were licensed, have you been practicing
      your profession on a full time basis?

5.    Please describe your educational background with schools
      attended, dates of graduation and degrees conferred.

6.    Have you written and/or published any articles, pamphlets,
      books or other literature in the field of your profession and,
      if so, describe briefly?

7.    Are you a member of any professional, trade or business
      associations?

8.    Have you been bestowed with any professional honors and, if
      so, which ones?

9.    During the course of working as a professional in your
      industry, what positions of responsibility have you held?

10.   By whom were you employed on or about March 3, 2001?

11.   How long had you been employed by the Office of the Public
      Prosecutor?

12.   What were your duties as the Acting Public Prosecutor on or
      about March 3, 2001?

13.   What is the business address of the Office of the Public
      Prosecutor in which you worked on or about March 3, 2001?

14.   What is the business of the Office of the Public Prosecutor?

15.   Prior to working with the Office of the Pubic Prosecutor,
      where were you employed, in which position and what were your
      duties there?

ATTACHMENT B - Page 1

16. Did there come a time when you became aware of an incident at Malpensa International Airport wherein an Alitalia passenger, Marc DeMartinis, became ill during a flight from Boston to Milan and died shortly after landing in Milan at a local hospital?

17. How did you become aware of this situation?

18. As the Acting Public Prosecutor, what was your response to this situation.

19. Was the Public Prosecutor charged with the duty of conducting an investigation into the death of Marc DeMartinis?

20. Is this standard procedure?

21. What was the purpose of the investigation?  Was there an investigation team? Who was on it and what were their respective roles?

22. What does the investigation entail?

23. Who conducts the investigation?  Does anyone assist in the investigation?

24. Does the investigation include the involvement of police officers?

25. What is the role of the police officers?

26. Are interviews conducted?  Of whom? Who was interviewed in this matter?

27. Are you aware of the results of these interviews?

28. Was an autopsy performed? Under whose authority?

29. Who performed the autopsy?  Have you seen the autopsy report?

30. Are you aware of the results of the autopsy?

31. What was the coroner's conclusion as to the decedent's cause of death as stated in the autopsy report?

32. Did you at any time discuss the results of the autopsy with the coroner?  What was the substance of that conversation?

**ATTACHMENT B - Page 2**

33. Was the pilot of Alitalia flight 619 interviewed in connection with this incident? If so, what do you recall him saying about the incident?

34. Did he provide you with a written report?

35. Do you recall the contents of that report?

36. Did the Public Prosecutor's Office ever file criminal charges against any person, party, and/or entity as a result of the information gathered and conclusions made during the investigation?

37. Did the results of the investigation ever lead you to believe that Alitalia was in some way responsible for the death of Marc DeMartinis?

38. What was the final conclusion of your investigation?

39. Is the investigation now closed?

40. During the course of the investigation did you prepare a written report?

41. Do you have that written report?

42. Were you provided with other written reports concerning the investigation? If so, from whom?

43. Did you make any written report of the incident involving Mr. Marc DeMartinis? If so, to whom did you make the report, what was the substance of the report and in whose current custody is the report?

**ATTACHMENT B - Page 3**

**ATTACHMENT C TO REQUEST FOR INTERNATIONAL
JUDICIAL ASSISTANCE QUESTIONS TO
ASSISTANT COMMANDER MIRKO SBORDONI:**

1.    What is your occupation?

2.    Are you licensed to practice your profession and, if so, when were you so licensed?

3.    By whom are you licensed and where does the license entitle you to practice your profession?

4.    Since the time you were licensed, have you been practicing your profession on a full time basis?

5.    Please describe your educational background with schools attended, dates of graduation and degrees conferred.

6.    Where did you receive your training as a police officer?

7.    Are you a member of any professional, trade or business associations?

8.    Have you been bestowed with any professional honors and, if so, which ones?

9.    During the course of working as a police officer, what positions of responsibility have you held?

10.   By whom were you employed on or about March 3, 2001? For how long had you been employed by the National Police, Border Police Bureau?

11.   What were your duties as an employee of the National Police on or about March 3, 2001?

12.   What is the business address of the National Police, Border Police Bureau in which you worked on or about March 3, 2001?

13.   What is the business of the National Police?

14.   Prior to working with the National Police, where were you employed, in which position and what were your duties there?

15.   Did there come a time on March 3, 2001, when you became aware that an ALITALIA passenger, Mr. Marc DeMartinis, had died at a local hospital shortly after his arrival at Malpensa International Airport?

**ATTACHMENT C - Page 1**

16.  What was the approximate time of day on March 3, 2001, that you first learned of the incident?  Who advised you of the incident?

17.  What were your official duties in connection with the incident?

18.  Where were you when you received the instruction to interview the decedent's mother, Natalie DeMartinis?

19.  What time of day did you conduct the interview?

20.  Where did you conduct the interview?

21.  Was the interview part of a police investigation?

22.  Did you prepare a written report of the interview?

23.  Other than you and Mrs. DeMartinis, who else was present at the interview?

24.  How long did the interview last?

25.  Please describe Mrs. DeMartinis' demeanor?

26.  Was this the first time you had met Mrs. DeMartinis?

27.  Do you recall whether Mrs. DeMartinis told you that Alitalia had provided medical assistance of any kind to the decedent while on board the aircraft?

28.  Please describe what Mrs. DeMartinis told you concerning the incident?

29.  Did she tell you that her son had slept during the flight?

30.  Did Mrs. DeMartinis state whether her son ever gained consciousness after she attempted to wake him?

31.  Other than what was said during the interview, did you and Mrs. DeMartinis have any other discussion or conversation?

32.  Did Mrs. DeMartinis have the opportunity to review her statement for accuracy? Did she?

33.  Did you see Mrs. DeMartinis speak to anyone other than yourself either before or after the interview? If so, who?

**ATTACHMENT C - Page 2**