Exhibit 2

TRIBUNALE DISTRETTUALE DEGLI STATI UNITI
DISTRETTO DEL CONNECTICUT

|  |  |  |
|---|---|---|
| SUSAN DEMARTINIS, per conto proprio, quale coniuge sopravvivente e quale AMMINISTRATRICE DELLA MASSA EREDITARIA DI MARC PETER DEMARTINIS, DEFUNTO, | ) ) ) ) ) | |
| Attori, contro | ) ) ) | **302 Civ. 1757 (AVC)** |
| ALITALIA - LINEE AEREE ITALIANE, S.p.A. | ) ) ) | |
| Convenuta. | ) ) | |

RICHIESTA DI ASSISTENZA GIUDIZIARIA INTERNAZIONALE PER
L'INTERROGATORIO DI TESTIMONI IN ITALIA AI SENSI DELLA
CONVENZIONE DELL'AIA RIGUARDO L'ASSUNZIONE DELLE PROVE ALL'ESTERO
IN MATERIA CIVILE O COMMERCIALE

| | | |
|---|---|---|
| 1. | Mittente: | Ufficio del Cancelliere Tribunale Distrettuale degli Stati Uniti Distretto del Connecticut - Hartford Abraham Ribicoff Federal Building 450 Main Street Hartford, CT 06103 Tel. (860)240-3200 |
| 2. | Autorità Centrale dello Stato a cui è inoltrata la Richiesta | Corte d'Appello di Milano Tribunale Civile di Milano Corso di Porta Vittoria Milano (20122) ITALIA |
| 3. | Persona alla quale dovrà essere spedita la Richiesta eseguita: | On. Alfred V. Covello Giudice Distrettuale degli Stati Uniti Tribunale Distrettuale degli Stati Uniti Distretto del Connecticut - Hartford Abraham Ribicoff Federal Building 450 Main Street Hartford, CT 06103 U.S.A. |

4.    Ai  sens    dell'Articolo  3    della  Convenzione  dell'Aia,  il

sottoscritto richiedente si pregia di presentare la seguente domanda:

5.  Autorità Giudiziaria          Ufficio del Cancelliere
    Richiedente:                  Tribunale Distrettuale
                                  degli Stati Uniti
                                  Distretto del Connecticut - Hartford
                                  Abraham Ribicoff Federal Building
                                  450 Main Street
                                  Hartford, CT 06103
                                  Tel. (860)240-3200

    Alle Autorità competenti      Repubblica Italiana
    della:

6.  Nomi e indirizzi delle
    parti in causa e dei
    loro rappresentanti:
        a.  Attrice:              SUSAN DEMARTINIS
                                  c/o James V. Sabatini, Esq.
                                  Sabatini & Associates, LLC
                                  One Market Square
                                  Newington, Connecticut   06111-2992
                                  (860)667-0839
        b.  Convenuto:            ALITALIA LINEE - AEREE ITALIA, S.p.A.
                                  c/o Eugene Massamillo, Esq.
                                  BIEDERMANN, HOENIG, MASSAMILLO & RUFF,
                                  P.C.
                                  90 Park Avenue - 36th Floor
                                  New York, New York 10016
                                  U.S.A.
                                  (212) 697-6555

7.  Natura e scopo della         La presente è un'azione civile
    azione e riepilogo dei       riguardante l'accusa di omicidio
    fatti:                       colposo presentata dall'attrice, Susan
                                  DeMartinis, fondata sul decesso del
                                  coniuge della stessa, il defunto, Marc
                                  DeMartinis, il 3 marzo 2001, a bordo
                                  del volo Alitalia 619 tra l'Aeroporto
                                  Logan International di Boston e
                                  l'Aeroporto internazionale della
                                  Malpensa a Milano, Italia. L'Attrice
                                  afferma che l'Alitalia non ha prestato
                                  cure mediche d'emergenza al defunto.
                                  L'Attrice asserisce che l'Alitalia è
                                  stata negligente nel rispondere alla
                                  situazione di emergenza medica ed ha
                                  causato il decesso del defunto.
                                  L'Alitalia nega le asserzioni. Invece,
                                  l'Alitalia asserisce che la madre del

defunto non richiese assistenza fino a quando il volo era prossimo all'arrivo all'aeroporto di Milano, dopo aver scoperto che non riusciva a svegliare il defunto.

| 8. | Evidenza da ottenere o altra azione giudiziario da eseguire | Si richiede che le Autorità giudiziarie italiane emettano gli Ordini appropriati per dar modo ad Alitalia Airlines di ottenere le testimonianze orali d'importanza critica ed evidenza in propria difesa, con ordine ai sensi dell'Articolo 18 della Convenzione, ai seguenti testimoni (1) Dr. Roberto Caterini, Medico di Turno, Aeroporto Internazionale della Malpensa, dipendente di SEA; (2) D. Giatti, infermiere, Pronto Soccorso, Aeroporto Internazionale della Malpensa, anche dipendente di SEA; (3) Dott. Cristiana Roveda, Sostituto Procuratore , Procura della Repubblica di Busto Arsizio; e (4) Mirko Sbordoni, Vice Comandante, Pubblica Sicurezza, Ufficio polizia di frontiera, Aeroporto internazionale della Malpensa. Tutti i predetti testimoni risiedono Italia. |
|----|----|----|
| 9. | Identità ed indirizzo della persona che dovrà essere interrogata: | Dott. Roberto Caterini Società Esercizi Aeroportuali S.p.A. ("SEA") Aeroporto internazionale della Malpensa Terminal Due Milano, ITALIA Tel. ++39-02-7485-4445 Infermiere professionale D. Giatti Società Esercizi Aeroportuali S.p.A. ("SEA") Aeroporto internazionale della Malpensa Terminal Due Milano, ITALIA Tel. ++39-02-7485-4445 |

Dott. Cristiana Roveda
Procuratore della Repubblica
Procura della Repubblica
Largo Giardino 43
21052 Busto Arsizio
Varese, Italia
Tel. ++39-02-2903-5264
Vice    Comandante    Mirko    Sbordoni
Pubblica Sicurezza
Ufficio polizia di frontiera
Aeroporto internazionale della
Malpensa
Unità di Investigazioni Giudiziarie
Milano, Italia
Tel. 39-02-5858-4721

10. Domande da porre alle persone che saranno interrogate o dichiarazione dell'oggetto dell'interrogatorio:

Il Dott. Roberto Caterini e l'infermiere professionale Giatti prestarono cure mediche d'emergenza al defunto e, nel frattempo, parlarono con i membri dell'equipaggio ALITALIA presenti a bordo dell'aeromobile e possibilmente anche con la madre del defunto, la Signora Natalie DeMartinis. Il Dott. Caterini e l'infermiere professionale Giatti accompagnarono il defunto all'ospedale di Gallarate, dove si verificò il decesso. Il Dott. Caterini quindi preparò un rapporto per il Procuratore della Repubblica, Dott. Cristiana Roveda, in appoggio dell'inchiesta di quest'ultima. La testimonianza del Dott. Caterini e dell'infermiere professionale Giatti è di importanza critica per la difesa dell'ALITALIA, avendo questi ultimi assistito il defunto immediatamente prima del decesso e saranno in grado do testimoniare riguardo la causa del decesso dello stesso e riguardo alle

conversazioni da essi intrattenute con l'equipaggio ALITALIA. Si richiede che siano poste al Dott. Caterini e all'infermiere professionale Giatti le domande esposte nell'Allegato A, qui accluso e a cui si rimanda il Tribunale.

Dopo il decesso del defunto, fu condotta un'indagine dell'incidente da parte della Procura della Repubblica, come richiesto dalla prassi normale. La Dott.ssa Cristiana Roveda, Sostituto Procuratore presso la Procura della Repubblica, diresse l'inchiesta. L'ispettore Mirko Sbordoni dell'Ufficio polizia di frontiera presso l'Unità di Investigazioni Giudiziarie dell'Aeroporto internazionale della Malpensa prese parte all'indagine e interrogò la madre del defunto immediatamente dopo l'incidente. L'indagine condotta dalla Dott.ssa Cristiana Roveda è consistita degli interrogatori della madre del defunto, di un ordine per l'autopsia del defunto ed il referto dell'autopsia stessa, l'indagine da parte della polizia, e la redazione delle dichiarazioni scritte del Dott. Roberto Caterini ed il rapporto dell'incidente nel "flight log" redatto dal Capitano Nunzio Castelli, il pilota in comando del volo ALITALIA 619 che rispose all'incidente. L'ispettore Mirko Sbordoni interrogò la madre del defunto, Natalie DeMartinis, alcune ore dopo l'incidente. La base delle rivendicazioni dell'attrice contro ALITALIA è la sua asserzione che ALITALIA non rispose alla richiesta d'assistenza di Natalie DeMartinis quando quest'ultima si rese conto che non riusciva a svegliare il figlio per sbarcare dall'aeromobile. **Si richiede**

5

gentilmente che vengano poste alla Dott.ssa. Cristiana Roveda e al Vice Comandante Mirko Sbordoni le domande esposte negli Allegati "B" e "C" qui acclusi, e a cui si rimanda gentilmente il Tribunale.

| | | |
|---|---|---|
| 11. | Documenti o altri articoli da esaminare: | Qualsiasi referto medico, scritti, corrispondenza o altri documenti riguardanti il defunto [coniuge] dell'attrice, Marc DeMartinis. |
| 12. | Necessità che l'evidenza sia fornita sotto giuramento o dichiarazione solenne e gli eventuali moduli specifici da usare: | Ognuno dei testimoni dovrebbe essere interrogato sotto giuramento o dichiarazione solenne davanti alle Autorità competenti autorizzate a ricevere giuramenti o dichiarazioni solenni e/o il commissario nominato dal Tribunale Distrettuale degli Stati Uniti per il Distretto del Connecticut. |
| 13. | Metodologia o procedura speciale da osservare: | Si richiede: (1) che i rappresentanti delle parti in causa o i loro designati, interpreti, un videografo e uno stenografo ricevano il permesso di essere presenti durante l'interrogatorio; (2) che vengano escluse dallo interrogatorio, se permesso dalle leggi italiane tutte le persone, all'infuori dei funzionari giudiziari o il commissario debitamente nominato che dirige l'interrogatorio del testimone o dei testimoni, i patrocinatori legali delle parti, i patrocinatori legali dei testimoni, se del caso, gli stenografi, gli interpreti, il videografo e gli altri funzionari del Tribunale italiano normalmente presenti durante tali azioni legali; (3) che venga permesso ai rappresentanti o i loro designati di presentare ulteriori domande da porre a ciascun testimone dopo che questi avrà risposto alle domande esposte |

nella Sezione 10 di cui sopra; e (4)
che sia permesso a un videografo e a
uno      stenografo      di      registrare
testualmente      l'interrogatorio      di
ciascun testimone.

14.  Richiesta di notifica
     del tempo e luogo per
     l'esecuzione della
     Richiesta e l'identità
     e l'indirizzo delle
     persone che dovranno
     essere notificate:

     Si prega vengano notificate le seguenti persone della data e del
luogo in cui l'interrogatorio verrà effettuato:

                    Eugene Massamillo, Esq.
                    BIEDERMANN, HOENIG, MASSAMILLO & RUFF,
                    P.C.
                    Patrocinatori Legali del Convenuto
                    ALITALIA LINEE - AEREE ITALIANE S.p.A.
                    90 Park Avenue - 36th Floor
                    New York, New York 10016
                    U.S.A.
                    (212) 697-6555
                    James V. Sabatini, Esq.
                    Patrocinatore legale per l'Attrice
                    Sabatini & Associates, LLC
                    One Market Square
                    Newington, Connecticut   06111-2992
                    (860)[667-0839]

15.  Richiesta di presenza o partecipazione
     all'atto della firma della Lettera di
     Richiesta da parte del personale
     giudiziario dell'Autorità richiedente:

               Non è stata inoltrata alcuna
               richiesta a questo riguardo.


15.  Specificazione di privilegio o di
     dovere di rifiuto a deporre ai sensi
     delle leggi del Paese d'origine:


Ciascun testimone potrà rifiutarsi di rispondere a qualsiasi domanda
proposta ai sensi della Sezione 13(3) di cui sopra se la risposta
dovesse esporre tale persona ad un pericolo effettivo e notevole di
conseguenze penali negli Stati Uniti, o divulgare delle comunicazioni
riservate tra il testimone ed il suo patrocinatore legale.

17. Gli oneri e i costi incorsi che
    siano rimborsabili ai sensi del
    secondo comma dell'Articolo 14
    o dell'Articolo 26 della
    Convenzione saranno a carico di:

                          Convenuto ALITALIA LINEE - AEREE
                          ITALIA, S.p.A.
                          c/o BIEDERMANN, HOENIG, MASSAMILLO &
                          RUFF, P.C.
                          90 Park Avenue - 36th Floor
                          New York, New York 10016
                          U.S.A.

18. Data della Richiesta:        ___ Ottobre  2003

19. Firma e Sigillo
    dell'Autorità richiedente :    _____

                          ON. ALFRED V. COVELLO
                          GIUDICE DISTRETTUALE DEGLI STATI UNITI

Allegati: A, B e C

ALLEGATO "A" ALLA RICHIESTA DI ASSISTENZA
GIURIDICA INTERNAZIONALE DOMANDE PER
<u>(1) IL DOTT. ROBERTO CATERINI E (2) L'INFERMIERE PROFESSIONALE D.
GIATTI</u>:

1.    Qual è la sua professione?

2.    È abilitato per l'esercizio della sua professione, e, se lo
      è, quando ha ottenuto tale abilitazione?

3.    Da chi le è stata rilasciata l'abilitazione e in quale area
      geografica le da' il diritto di esercitare la sua
      professione?

4.    Da quando è stato abilitato, ha esercitato la sua
      professione a tempo pieno?

5.    Per favore descriva il suo iter accademico, elencando le
      scuole frequentate, le date in cui si è diplomato e i titoli
      di studio ricevuti.

6.    Lei ha scritto e/o pubblicato degli articoli, opuscoli,
      libri o altri lavori nel campo della sua professione e, se
      si, potrebbe darne una descrizione sommaria?

7.    È iscritto a albi professionali o associazioni
      professionali, di categoria o commerciali?

8.    Le sono mai state concesse onorificenze professionali e, se
      si, quali?

9.    Nel corso della sua attività professionale nel suo campo,
      quali posizioni di responsabilità ha occupato?

10.   Chi era il suo datore di lavoro nel periodo del 3 marzo
      2001?

11.   Da quanto tempo è alle dipendenze della Società Esercizi
      Aeroportuali S.p.A. ("SEA")?

12.   Quali erano le sue mansioni quale dipendente della SEA nel
      periodo del 3 marzo 2001?

13.   Qual è l'indirizzo della sede della SEA presso la quale

lavorava nel periodo del 3 marzo 2001?

14. Che attività commerciale svolge la SEA?

15. Prima di entrare alle dipendenze della SEA, che attività svolgeva e presso di chi, in quale posizione e quali erano le sue mansioni

16. Le è stato chiamato il 3 marzo 2001 per prestare assistenza a un passeggero della linea aerea dal nome di Marc DeMartinis all'aeroporto della Malpensa?

17. Dove si trovava il Sig. DeMartinis il 3 marzo 2001 quando lei è stato chiamato per prestargli assistenza all'aeroporto della Malpensa?

18. Approssimativamente, che ore erano quando lei è stato chiamato il 3 marzo 2001 per prestare assistenza al Sig. DeMartinis all'aeroporto della Malpensa?

19. Come è venuto a conoscenza che il Sig. DeMartinis aveva bisogno della sua assistenza?

20. Dove si trovava lei quando ha ricevuto l'ordine di prestare assistenza al Sig. DeMartinis? Dove le è stato detto di recarsi?

21. Quando lei è arrivato dal Sig. DeMartinis, erano presenti dei dipendenti dell'ALITALIA? Ha parlato con loro? E loro hanno parlato con lei? Se si, che cosa hanno detto?

22. Era presente qualcun altro? Chi? Lei ha parlato con quella persona o persone? Che cosa le ha detto quella persona?

23. Quando lei è arrivato dal Sig. DeMartinis, questi era sdraiato sul pavimento, era seduto, in piedi o in qualche altra posizione? Per favore descriva le sue osservazioni a questo riguardo.

24. Quando lei è arrivato dal Sig. DeMartinis, questi era cosciente?

**ATTACHMENT A - Page 2**

25.  Se il Sig. DeMartinis era privo di conoscenza, lei ne ha
     rilevato i segni vitali?  Respirava?  Gli ha controllato la
     pressione del sangue?  Si ricorda qual era?

26.  A quel punto le è stato indicato da qualcuno dei presenti
     quello che era accaduto?  Se si, che cosa le è stato detto
     da quella persona o quelle persone?

27.  Dopo aver osservato il Sig. DeMartinis, lei ha formulato
     un'opinione sua riguardo a quanto gli era accaduto e, se lo
     ha fatto, qual era tale opinione?  Su quali osservazioni
     specifiche era basata?

28.  Ha parlato con Natalie DeMartinis, la madre del Sig.
     DeMartinis?    Se si,   qual  era  il   contenuto  della
     conversazione.

29.  Per quanto tempo è rimasto sull'aeromobile con il Sig.
     DeMartinis?

30.  Ha prestato cure di emergenza al Sig. DeMartinis?
31.  Che tipo di assistenza ha prestato al Sig. DeMartinis?

32.  Il Sig. DeMartinis è stato spostato dall'aeromobile?  Se si,
     da chi?

33.  Il Sig. DeMartinis è stato trasportato all'ospedale? Se si,
     (a) a quale ospedale è stato trasportato?  (b) con che mezzo
     vi  è  stato  trasportato e(c)  lei  lo  ha  accompagnato
     all'ospedale?

34.  Il Sig. DeMartinis era cosciente durante il tragitto fino
     all'ospedale?  Qual era la sua condizione durante il viaggio
     all'ospedale?  La sua condizione cambiò dopo che fu spostato
     dall'aeromobile?

36.  Lei ha parlato con qualcuno durante il tragitto fino
     all'ospedale e, se si, qual è stato il contenuto di tale
     conversazione?

37.  Lei ha prestato cure mediche o assistenza al Sig. DeMartinis
     mentre quest'ultimo si trovava all'ospedale? Se si, quali
     cure mediche o assistenza specifiche ha prestato al Sig.

**ATTACHMENT A - Page 3**

DeMartinis?

38. Se lei non ha prestato alcuna cura medica o assistenza al Sig. DeMartinis mentre quest'ultimo si trovava all'ospedale, ha osservato o saputo se qualcun altro gli ha prestato cure o assistenza? Se si, chi e quale trattamento terapeutico o assistenza gli è stata prestata?

39. Ha parlato con il medico che ha prestato cure al Sig. DeMartinis all'ospedale? Per favore descriva il contenuto della conversazione.

40. Il Sig. DeMartinis è stato accompagnato all'ospedale da qualcun altro che era stato presente sull'aeromobile? Chi?

41. Lei ha chiesto a qualcuno sull'aeromobile o all'ospedale se il Sig. DeMartinis aveva assunto delle droghe o dei farmaci prima dell'incidente?  Se si, a chi e che cosa le hanno detto?

42. Ha avuto occasione di osservare altre persone che avevano subito un infarto miocardico? Se si, quali sintomi presentavano tali persone? Quali sintomi simili presentava il Sig. DeMartinis?

43. Approssimativamente quanto tempo dopo l'arrivo all'ospedale del Sig. DeMartinis è stato dato l'annuncio che era deceduto?  Lei era presente?  Se non lo era, come ha ottenuto tale informazione? Lo ha riferito a qualcuno?

44. Lei ha accompagnato qualcuno fuori dall'ospedale e, se si, chi?

45. Dopo aver lasciato l'ospedale, ha avuto in seguito delle conversazioni con qualcuno riguardo questo incidente? Con chi? Quale era il contenuto di tale conversazione ?

45. Ha redatto un rapporto scritto dell'incidente riguardante il Sig. DeMartinis? Se si, per quali scopi è stato redatto il rapporto, qual era il contenuto del rapporto, e chi è in possesso di tale rapporto oggi?

**ALLEGATO A - Pagina 4**

46.  Nel rapporto, è arrivato a delle conclusioni riguardo
     l'incidente? Per favore descriva tali conclusioni.

ALLEGATO "B" ALLA RICHIESTA DI ASSISTENZA
GIURIDICA INTERNAZIONALE DOMANDE PER
LA DOTT.SSA. CRISTIANA ROVEDA, SOSTITUTO PROCURATORE DELLA
REPUBBLICA:

1.   Qual è la sua professione?

2.   È abilitata per l'esercizio della sua professione, e, se lo
     è, quando ha ottenuto tale abilitazione?

3.   Da chi le è stata rilasciata l'abilitazione e in quale area
     geografica le da' il diritto di esercitare la sua
     professione?

4.   Da quando è stata abilitata, ha esercitato la sua
     professione a tempo pieno?

5.   Per favore descriva il suo iter accademico, elencando le
     scuole frequentate, le date in cui si è diplomato e i titoli
     di studio ricevuti.

6.   Ha scritto e/o pubblicato degli articoli, opuscoli, libri o
     altri lavori nel campo della sua professione e, se si,
     potrebbe darne una descrizione sommaria?

7.   È iscritta ad albi professionali o associazioni
     professionali, di categoria o commerciali?

8.   Le sono mai state concesse onorificenze professionali e, se
     si, quali?

9.   Nel corso della sua attività professionale nel suo campo,
     quali posizioni di responsabilità ha occupato?

10.  Chi era il suo datore di lavoro nel periodo del 3 marzo
     2001??

11.  Da quanto tempo ha un rapporto d'impiego con la Procura
     della Repubblica?

12.  Quali erano le sue mansioni quale Sostituto Procuratore
     della Repubblica nel periodo del 3 marzo 2001?

13.  Qual è l'indirizzo della sede della Procura della Repubblica

presso la quale lei svolgeva la sua attività professionale nel periodo del 3 marzo 2001?

14. Che attività svolge Procura della Repubblica ?

15. Prima di iniziare il suo rapporto d'impiego con la Procura della Repubblica, che attività svolgeva e presso di chi, in quale posizione e quali erano le sue mansioni?

16. È giunto un momento in cui lei è venuta a conoscenza di un incidente all'Aeroporto internazionale della Malpensa nel corso del quale un passeggero dell'Alitalia, Marc DeMartinis, è stato colto da malore durante il volo da Boston a Milano ed è deceduto presso l'ospedale locale poco tempo dopo lo sbarco a Milano?

17. Come venne a conoscenza della situazione?

18. Quale Sostituto Procuratore della Repubblica, quale è stato il suo responso alla situazione?

19. È stato assegnato al Procuratore della Repubblica il dovere di condurre un'inchiesta sul decesso di Marc DeMartinis?

20. È questa la prassi normale?

21. Qual era lo scopo dell'inchiesta?    Esisteva un team investigativo? Chi ne faceva parte e quali erano i loro ruoli rispettivi?

22. Che cosa comporta l'inchiesta?

23. Chi conduce l'inchiesta?    Chi, se del caso, assiste nell'inchiesta?

24. L'inchiesta include la partecipazione di agenti della polizia?

25. Qual è il ruolo degli agenti di polizia?

26. Sono condotti interrogatori?    Di chi? Chi è stato interrogato a questo proposito?

**ALLEGATO B - Pagina 2**

27. È a conoscenza dei risultati di tali interrogatori?

28. È stata eseguita un'autopsia? Sotto l'autorità di chi?

29. Chi a eseguito l'autopsia? Lei ha visto il referto dell'autopsia?

30. È al corrente del referto dell'autopsia?

31. Quale è stata la conclusione del medico legale circa la causa del decesso del Sig. DeMartinis, come dichiarata nel referto dell'autopsia?

32. Ha mai discusso i risultati dell'autopsia con il medico legale? Quale era il contenuto della conversazione?

33. Il pilota del volo Alitalia 619 è stato interrogato in relazione all'incidente? Se si, che cosa ricorda abbia detto a proposito dell'incidente?

34. Le ha fornito un rapporto scritto?

35. Lei ricorda il contenuto di tale rapporto?

36. La Procura della Repubblica ha mai inviato una citazione in giudizio di qualsiasi parte, persona fisica e/o persona giuridica a risultato delle informazioni raccolte e le conclusioni tratte durante l'inchiesta?

37. I risultati dell'inchiesta l'hanno portata mai a credere che l'Alitalia fosse in qualche modo responsabile del decesso di Marc DeMartinis?

38. Quale è stata la conclusione finale della sua inchiesta?

39. L'inchiesta è attualmente chiusa?

40. Nel corso dell'inchiesta lei ha redatto un rapporto scritto?

41. Tale rapporto scritto è in suo possesso?

42. Le sono stati forniti altri rapporti scritti riguardanti

**ALLEGATO B - Pagina 3**

l'inchiesta?   Se si, da chi?

43.   Ha redatto un rapporto scritto dell'incidente riguardante il
      Sig. Marc DeMartinis? Se si, a chi ha presentato il
      rapporto, qual è il contenuto di tale rapporto e chi lo
      custodisce attualmente?

**ALLEGATO B - Pagina 4**

**ALLEGATO "C" ALLA RICHIESTA DI ASSISTENZA
GIURIDICA INTERNAZIONALE DOMANDE PER
IL VICE COMANDANTE MIRKO SBORDONI:**

1.  Qual è la sua professione?

2.  È abilitato per l'esercizio della sua professione, e, se lo è, quando ha ottenuto tale abilitazione?

3.  Da chi è stata rilasciata l'abilitazione e in quale area geografica le da' il diritto di esercitare la sua professione?

4.  Da quando è stato abilitato, ha esercitato la sua professione a tempo pieno?

5.  Per favore descriva il suo iter accademico, elencando le scuole frequentate, le date in cui si è diplomato e i titoli di studio ricevuti.

6.  Dove ha ricevuto la sua formazione come agente di polizia?

7.  È iscritto a albi professionali o associazioni professionali, di categoria o commerciali?

8.  Le sono mai state concesse onorificenze professionali e, se si, quali?

9.  Nel corso del suo servizio quale agente di polizia, quali posizioni di responsabilità ha occupato?

10. Chi era il suo datore di lavoro nel periodo del 3 marzo 2001? Da quanto tempo era membro dell'Ufficio Polizia di Frontiera della Pubblica Sicurezza,?

11. Quali erano le sue mansioni quale membro della Pubblica Sicurezza nel periodo del 3 marzo 2001?

12. Qual è l'indirizzo della sede della Pubblica Sicurezza, Ufficio Polizia di Frontiera in cui lei prestava servizio nel periodo del 3 marzo 2001?

13. Quale attività svolge la Pubblica Sicurezza?

14.  Prima di prestare servizio con la Pubblica Sicurezza, presso
     di chi lavorava, che posizione occupava e quali erano le sue
     mansioni?

15.  Il 3 marzo 2001, lei venne a conoscenza del fatto che un
     passeggero dell'ALITALIA, Mr. Marc DeMartinis, era deceduto
     presso un ospedale locale poco dopo il suo arrivo
     all'Aeroporto internazionale della Malpensa?

16.  Approssimativamente a che ora il 3 marzo 2001, venne a
     conoscenza dell'incidente?  Chi la informò dell'incidente?

17.  Quali erano le sue mansioni ufficiali in relazione
     all'incidente?

18.  Dove si trovava lei quando fu istruito di interrogare la
     madre del defunto, Natalie DeMartinis?

19.  A che ora condusse l'interrogatorio?

20.  Dove si svolse l'interrogatorio?

21.  L'interrogatorio faceva parte di un'investigazione da parte
     della polizia?

22.  Lei scrisse un verbale dell'interrogatorio?

23.  Oltre a lei e alla Signora DeMartinis, chi altro era
     presente all'interrogatorio?

24.  Per quanto tempo durò l'interrogatorio?

25.  Per favore descriva il comportamento della Signora
     DeMartinis?

26.  Era questa la prima volta che aveva incontrato la Signora
     DeMartinis?

27.  Si ricorda se la Signora DeMartinis le disse che l'Alitalia
     aveva prestato assistenza medica di qualsiasi tipo al
     defunto mentre si trovava a bordo dell'aeromobile?

28.  Per favore descriva che cosa le disse la Signora DeMartinis
     riguardo l'incidente?

**ALLEGATO C - Pagina 2**

28. Per favore descriva che cosa le disse la Signora DeMartinis riguardo l'incidente?

29. Le disse che suo figlio aveva dormito durante il volo?

30. La Signora DeMartinis le disse se suo figlio aveva mai ripreso conoscenza dopo i suoi tentativi di svegliarlo?

31. Oltre a quanto fu detto nel corso dell'interrogatorio, lei intrattenne nessuna altra conversazione o discussione con la Signora DeMartinis?

32. La Signora DeMartinis ebbe l'opportunità di esaminare la propria dichiarazione per verificarne l'accuratezza? Lo fece?

33. Vide la Signora DeMartinis parlare con chiunque altro oltre a lei prima o dopo l'interrogatorio? Se sì, con chi?

County of Volusia )
City of Daytona Beach Shores )
)
) ss.
)
State of Florida )

## CERTIFICATE OF ACCURACY

I, LAURA V. ARCHIAPATTI, a professional translator in the English to Italian language

pair, member in good standing of the American Translators Association, the New York

Circle of Translators, and the American Translators Association of Florida, hereby certify

that the attached translation from ENGLISH into ITALIAN of the Request for

International Judicial Assistance, consisting of nine pages, and its attachments A, B, and

C, consisting of 5, 4 and 3 pages respectively, is a true and accurate rendition of the

original documents to the best of my knowledge and belief.

_____
Laura Archiapatti

Sworn to and subscribed before me this 27th day of October , 2003, at

Daytona Beach Shores, Florida.

[SEAL]

_____
Notary Public

State of Florida

My Commission Expires:



Kathleen L. Adle
MY COMMISSION # DD068421 EXPIRES
October 30, 2005
BONDED THRU TROY FAIN INSURANCE, INC.

**BIEDERMANN, HOENIG, MASSAMILLO & RUFF**
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NEW YORK 10016

TELEPHONE (212) 697-6555

FACSIMILE (212) 986-3509

October 29, 2003

Hon. Alfred V. Covello
United States District Judge
United States District Court
District of Connecticut - Hartford
Abraham Ribicoff Federal Building
450 Main Street
Hartford, CT 06103

      Re:    Estate of Mark Peter DeMartinis v. Alitalia Airlines
              Case No.:    3:02 CV 1757(AVC)
              Our File No.: 700.13654

Honorable Sir:

      We represent Alitalia Linee-Aeree Italiane, S.p.A. ("Alitalia") in the above referenced action.

      We enclose courtesy copies of Defendant Alitalia's "Motion for the Issuance of a Letter of Request for the Examination of Witnesses in Italy Pursuant to the Hague Convention on the Taking of Evidence Abroad." We have filed the original of these papers with the Clerk of this Court. In accordance with the provisions and requirements of the Hague Convention, we also have provided you with a duplicate original for execution.

      The Motion is supported by a Memorandum of Law and the "Request for International Judicial Assistance for the Examination of Witnesses in Italy Pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters" (the "Letter of Request"). The Letter of Request is annexed to the Motion as Exhibit "1". Also included is a Proposed Order for the Court.